# In the United States District Court
# for the Southern District of Georgia
# Waycross Division

JEFFREY GARDNER,

    Plaintiff,

    v.

LEN DAVIS, et al.,

    Defendants.

5:25-cv-79

## ORDER

This action is before the Court on four motions to dismiss: the first filed by Defendant Dillon Veal, dkt. no. 11, the second filed collectively by Defendants FFP Sub, LLC and Valarie Sandiford, dkt. no. 12, the third filed by Defendant Jerry Mullis, dkt. no. 15, and the fourth filed collectively by Defendants Len Davis and Jason Bohannan, dkt. no. 19. The motions have been fully briefed and are ripe for review. Dkt. Nos. 11, 12, 15, 19, 20, 21, 23, 29, 30, 32.

For the reasons given below, the motions to dismiss filed by Defendant Veal, Sheriff Davis, and Officer Bohannan are **GRANTED**, dkt. nos. 11, 19, and the motions to dismiss filed by Dr. Mullis, FFP Sub, and Nurse Sandiford are partially **GRANTED** and partially **DENIED**, dkt. nos. 12, 15.

**BACKGROUND**

## I. Factual Background[1]

This case arises out of Plaintiff Jeffrey Gardner's pretrial confinement in the Brantley County Jail ("the jail") over the course of nineteen days in August, 2023, and the medical treatment—or lack thereof—he received there. Dkt. No. 1 ¶ 1.

Plaintiff's confinement began on August 13, 2023, when he was arrested and transported to the jail. Id. ¶ 16. Upon his arrival, Plaintiff was allegedly placed in an intake cell. Id. ¶ 18. According to the complaint, Plaintiff was never "fully booked" into the jail and remained in the intake cell for the full nineteen days of his pretrial confinement. Id. ¶ 18.

Upon intake, Plaintiff allegedly did not receive a proper medical examination. Id. ¶ 19. A booking report purportedly indicated, however, that Plaintiff showed risks associated with his mental and physical health, as well as a risk of suicide. Id. The booking report also allegedly indicated that he had behavioral problems. Id. Plaintiff allegedly has a history of mental illness, and Plaintiff's arresting officer purportedly believed that "drugs may have aggravated an underlying mental issue." Id. ¶¶ 15–16.

---

[1] In the motion to dismiss analysis, the Court must "accept all factual allegations in a complaint as true and take them in the light most favorable to [the] plaintiff." Dusek v. JPMorgan Chase & Co., 832 F.3d 1243, 1246 (11th Cir. 2016) (citing Erickson v. Pardus, 551 U.S. 89, 94 (2007)).

Plaintiff alleges that his behavior and demeanor throughout his confinement at the jail should have put the jail staff on notice that he needed mental and physical evaluations. Id. ¶ 20. For example, Plaintiff alleges that he did not have any clothing on during his detention, and that he did not eat or drink water for days at a time. Id. ¶¶ 20–21. According to the complaint, Plaintiff did not eat or drink water for a period of at least seven consecutive days. Id. ¶ 21. Plaintiff also alleges that officers at the jail noted that he appeared to have "some kind of mental disability." Id. ¶ 20. Plaintiff alleges that footage shows Brantley County officers near or in Plaintiff's cell during his confinement on many occasions, and that his condition alone would have indicated his serious need for treatment. Id. ¶ 25. Despite this, Plaintiff alleges that officers failed to take any action. Id.

On August 15, 2023,[2] the jail medical officer allegedly reported that Plaintiff had refused "New Intake," also known as a "health appraisal" in Brantley County Jail policies. Id. ¶¶ 22–23. Jail staff allegedly attempted several additional, and unsuccessful, health appraisals of Plaintiff. Id. ¶ 23. Plaintiff

---

[2] There appears to be a typo in paragraphs twenty-two, twenty-six, twenty-seven, and thirty-six of the complaint: these paragraphs contain allegations relating to dates in August 2024. Dkt. No. 1 ¶¶ 22, 26, 27, 36. The opening paragraph of the complaint states, however, that the events relating to Plaintiff's detention occurred "from August 13, 2023 through August 31, 2023." Id. ¶ 1.

allegedly never received a health appraisal. Id.

Defendant Nurse Valarie Sandiford, a licensed practical nurse, was allegedly responsible for performing health appraisals at the jail. Id. ¶ 24.[3] Nurse Saniford was employed by Defendant FFP Sub, LLC ("FFP Sub"), a private medical contractor retained by the Brantley County Sheriff's Office to provide medical services at the jail. Id. ¶¶ 8, 10. Nurse Sandiford allegedly observed Plaintiff's condition on several occasions, including on August 15, 16, 17, 23, and 25, 2023. Id. ¶¶ 24, 88. Nurse Sandiford was allegedly aware that Plaintiff was not eating and that he had failed to respond to questions. Id. ¶ 24. She was also purportedly aware that Plaintiff was suffering from a mental disability. Id.

Because Plaintiff was not eating or responding to questions and was apparently suffering from a mental disability, the jail staff requested a medical provider to examine Plaintiff on August 25, 2023. Id. ¶ 26. Defendant PA Dillon Veal, a licensed PA (physician assistant) employed by FFP Sub, performed an evaluation of Plaintiff the same day. Id. ¶¶ 9, 27. PA Veal allegedly noted Plaintiff's symptoms and that Plaintiff's cell was covered in urine. Id. ¶ 27. PA Veal's visit with Plaintiff allegedly lasted

---

[3] Plaintiff's complaint appears to erroneously refer to Nurse Sandiford as a "licensed physician assistant" at the beginning of the complaint. Dkt. No. 1 ¶ 10. She is referred to as a nurse throughout the remainder of the complaint, id. ¶¶ 24, 84, 88, and Nurse Sandiford's motion to dismiss describes her as a licensed practical nurse, dkt. no. 12 at 2.

4

just two minutes, and PA Veal purportedly did not take any further action with respect to Plaintiff until PA Veal learned of Plaintiff's later hospitalization. Id. ¶¶ 28–29. Other Brantley County Jail officers, as well as Nurse Sandiford, were allegedly present at this evaluation and took no action to provide Plaintiff with further treatment, despite his apparent condition. Id. ¶ 30. After Plaintiff's evaluation by PA Veal, Plaintiff's condition allegedly continued to worsen. Id. ¶ 31.

On August 30, 2023, officers allegedly entered Plaintiff's cell and instructed him to stand up and to take a shower. Id. ¶ 32. Plaintiff allegedly told the officers that he was unable to get up and walk out. Id. Officers noted that Plaintiff was unable to stand and also noted that Plaintiff had urinated on himself. Id. Officers, including Defendant Jail Administrator Officer Jason Bohannan, then allegedly placed Plaintiff into a wheelchair and transported him to a shower, and inmate workers cleaned the cell. Id. ¶¶ 7, 33. The officers allegedly took no action to seek treatment for Plaintiff. Id. ¶ 34.

The following day, on August 31, 2023, Officer Bohannan and other officers allegedly entered Plaintiff's cell to observe Plaintiff, and they did this repeatedly over the course of two hours without taking any further action. Id. ¶ 36. Two hours later, one of the officers called emergency medical services (EMS) and reported that Plaintiff had not eaten in six days and could not

5

get up. Id. ¶ 37.

EMS then transported Plaintiff to the hospital where doctors diagnosed him with sepsis, acute kidney injury, severe dehydration, urinary tract infection, hypothyroidism, hypothermia, myxedema coma, pneumomediastinum, right pneumothorax, and acute coronary syndrome. Id. ¶ 38. Plaintiff had allegedly lost around seventy pounds since his arrival at the jail nineteen days prior. Id. Though Plaintiff was allegedly unable to answer questions regarding his condition, EMS reported that he had anorexia for five days and was found on the floor of his jail cell. Id.

Plaintiff allegedly underwent treatment at the hospital and remained there until September 5, 2023. Id. ¶ 39. He reportedly continues to suffer physical and mental pain due to his experience at the Brantley County Jail. Id. As of the date of the complaint, August 13, 2025, Plaintiff was no longer in custody. Id. ¶ 41.

Defendant Dr. Jerry Mullis, M.D., is a licensed medical doctor employed by FFP Sub who was the supervising physician for PA Veal's work in the jail. Id. ¶¶ 11, 91, 95. Dr. Mullis allegedly never visited the jail or familiarized himself with the procedures for providing medical care at the jail. Id. ¶ 90.

Defendant Sheriff Len Davis is the Brantley County Sheriff and a supervisory official at the Brantley County Jail. Id. ¶¶ 6, 17. Sheriff Davis was allegedly the "officer in charge" of the Brantley County Jail, id. ¶ 48, and Plaintiff alleges that Sheriff

Davis failed to ensure that a licensed physician provided care at the jail, id. ¶ 59. Plaintiff further alleges that Sheriff Davis and Officer Bohannan failed to sufficiently supervise and train officers at the jail. Id. ¶¶ 63-75.

## II.    Procedural Background

### A. Gardner I

The parties acknowledge that this case is related to an earlier case filed in this Court: Case No. 5:24-cv-81 (hereinafter "*Gardner I*"). See, e.g., Dkt. No. 11 at 1-2; Dkt. No. 12 at 2; Dkt. No. 15 at 2; Dkt. No. 19 at 6; Dkt. No. 20 at 1. In *Gardner I*, filed on October 28, 2024, Plaintiff brought substantive claims of negligence (Count One) and deliberate indifference (Count Two) against various individual defendants including PA Veal and Officer Bohannan, as well as derivative claims for attorneys' fees (Count Three) and punitive damages (Count Four).[4] *Gardner I*, dkt. no. 1 ¶¶ 6, 11, 12, 53-75.[5] Specifically, Officer Bohannan is named in Counts One and Two and PA Veal is named in Count Two. Id. ¶¶ 53-

---

[4] Punitive damages and attorneys' fees are more properly considered forms of relief than standalone claims. See Estes v. Tuscaloosa City, Ala., 696 F.2d 898, 901 (11th Cir. 1983) ("Section 1988 authorizes attorneys' fees as part of a remedy for violations of civil rights statutes; it does not create an independent right of action." (citations omitted)); Stephen A. Wheat Tr. v. Sparks, 754 S.E.2d 640, 648 (Ga. Ct. App. 2014) ("An award of attorney fees, costs, or punitive damages is derivative of a plaintiff's substantive claims." (citations omitted)).
[5] Hereinafter, citations to the *Gardner I* docket will begin with "*Gardner I.*"

70. Much like the present case (hereinafter, "*Gardner II*"), *Gardner I* is based on Plaintiff's treatment and the injuries he allegedly suffered during his pretrial detention at the Brantley County Jail from August 13 to August 31, 2023. Id. ¶¶ 1, 16–75.

On September 23, 2025, Plaintiff moved to amend his complaint in *Gardner I* to add the claims and parties appearing in *Gardner II*, or, alternatively, to consolidate the two cases under Federal Rule of Civil Procedure 42. *Gardner I*, dkt. no. 32 at 2–3.

**B. Gardner II**

Plaintiff filed the present case, *Gardner II*, on August 13, 2025. Dkt. No. 1. In *Gardner II*, Plaintiff asserts the following substantive claims: "Negligent Violations of Ministerial Duties/Negligent Failure to Train or Supervise Employees to Avoid Violations of Ministerial Duties" against Officer Bohannan and Sheriff Davis (Count One); "Supervisory/Failure to Train Liability for Deliberate Indifference under the Eighth and/or Fourteenth Amendments 42 U.S.C. § 1983" against Officer Bohannan and Sheriff Davis (Count Two); "Deliberate Indifference under the Eighth and/or Fourteenth Amendments 42 U.S.C. § 1983" against Nurse Sandiford (Count Three); and Professional Negligence against PA Veal, Nurse Sandiford, Dr. Mullis, and FFP Sub (Count Four). Dkt. No. 1 ¶¶ 42–96. Plaintiff also brings derivative claims for attorneys' fees (Count Five) and punitive damages (Count Six) against all *Gardner II* defendants. Id. ¶¶ 97–101. PA Veal, Nurse

Sandiford, FFP Sub, Dr. Mullis, Officer Bohannan, and Sheriff Davis have all moved to dismiss the complaint. Dkt No. 11 (PA Veal); Dkt. No. 12 (Nurse Sandiford and FFP Sub); Dkt. No. 15 (Dr. Mullis); Dkt. No. 19 (Officer Bohannan and Sheriff Davis). Plaintiff responded in opposition to all four motions. Dkt. Nos. 20, 21, 23, 29. PA Veal and Dr. Mullis each submitted a reply in support of their respective motions. Dkt. No. 30 (PA Veal); Dkt. No. 32 (Dr. Mullis).

## LEGAL AUTHORITY

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While this pleading standard does not require "detailed factual allegations," "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). A complaint is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable

9

inference that the defendant is liable for the misconduct alleged." Id.

In deciding whether a complaint states a claim for relief, the Court must accept the facts alleged in the complaint as true and "construe them in the light most favorable" to the plaintiff. Ray v. Spirit Airlines, Inc., 836 F.3d 1340, 1347 (11th Cir. 2016) (citations omitted). The Court should not accept allegations as true if they merely recite the elements of the claim and declare that they are met; legal conclusions are not entitled to a presumption of truth. Iqbal, 556 U.S. at 678-79 (citing Twombly, 550 U.S. at 555); Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009) (citing Iqbal, 556 U.S. at 678).

A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282-83 (11th Cir. 2007) (per curiam) (quoting Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001)). Ultimately, if "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (alterations adopted).

10

**DISCUSSION**

## I.   Claim-Splitting

All Defendants argue that the doctrine of claim-splitting bars at least some of Plaintiff's present claims. See Dkt. No. 11 at 1-6; Dkt. No. 12 at 1-7; Dkt. No. 15 at 1-8; Dkt. No. 19 at 4-8. "Claim-splitting" describes an impermissible attempt by a plaintiff to bring duplicative claims against the same defendants—or privies of the same defendants—based on the same transaction or series of transactions in concurrent suits, like when a second suit is filed before a first suit has reached final judgment. See Vanover v. NCO Fin. Servs., Inc., 857 F.3d 833, 840-43 (11th Cir. 2017); Kennedy v. Floridian Hotel, Inc., 998 F.3d 1221, 1236 (11th Cir. 2021). The ability of a district court to dismiss a claim due to improper claim-splitting is derived from the court's authority to manage its docket. Vanover, 857 F.3d at 841. Claim-splitting is associated with the doctrines of *res judicata* and claim preclusion, as these doctrines all promote the conservation of judicial resources and "shield parties from vexatious and duplicative litigation." Id. (citing Katz v. Gerardi, 655 F.3d 1212, 1218 (10th Cir. 2011)). A court may dismiss a claim for improper claim-splitting, however, because of the court's docket-management capabilities, whereas the doctrine of *res judicata* protects the finality of judgments. Id.

The test to determine if claim-splitting exists is "whether

11

the first suit, assuming it were final, would preclude the second suit." Id. (quoting Katz, 655 F.3d at 1218). Thus, a district court may dismiss a plaintiff's cause of action due to claim-splitting when (1) the claims involve the same parties or their privies and (2) the separate claims arise from the same nucleus of operative facts. Id. at 841-42. (citing Petro-Hunt, LLC v. United States, 365 F.3d 385, 395-96 (5th Cir. 2004)) (other citations omitted).

Plaintiff does not dispute that both *Gardner I* and *Gardner II* are based on the same "basic factual background." See, e.g., Dkt. No. 20 at 7; Dkt. No. 21 at 11; Dkt. No. 23 at 11; Dkt. No. 29 at 12. Instead, Plaintiff makes three arguments against dismissal with prejudice due to improper claim-splitting: First, Plaintiff argues that, with respect to Officer Bohannan (a *Gardner I* defendant), the new claims against him are based on facts distinct from those that form the basis of the claims against Officer Bohannan in *Gardner I*. Dkt. No. 29 at 9-11. Second, Plaintiff argues that the new defendants named in *Gardner II* are not in privity with the *Gardner I* defendants and, therefore, the doctrine of claim-splitting does not apply to his claims against those defendants. Dkt. No. 21 at 8-10; Dkt. No. 23 at 8-10. Finally, Plaintiff argues that to the extent the claims in *Gardner II* constitute claim-splitting, the proper remedy would be to either (1) consolidate *Gardner I* and *Gardner II* under Federal Rule of Civil Procedure 42 or (2) to dismiss the offending claims without

12

prejudice and allow Plaintiff leave to amend *Gardner I* to join the *Gardner II* defendants and add the claims brought in *Gardner II*. Dkt. No. 20 at 6–7; Dkt. No. 21 at 10–11; Dkt. No. 23 at 10–11; Dkt. No. 29 at 10–12. The Court addresses each argument in turn.

## A. The Transactional Test: *Garner I* Defendants

Officer Bohannan and PA Veal appear as defendants in both *Gardner I* and *Gardner II*. *Gardner I*, dkt. no. 1 ¶¶ 6, 11, 53–75 (Officer Bohannan); id. ¶¶ 12, 25–29, 64–75 (PA Veal). Thus, the first step of the claim-splitting analysis is satisfied as to the claims against those Defendants, namely, the requirement that the defendant in the second-filed action is the same defendant in the first-filed suit or in privity with the same defendant. Vanover, 857 F.3d at 841–42. The Court next analyzes the second part of the test with respect to these Defendants: whether the claims in *Gardner II* arise from the same transaction or series of transactions as the claims in *Gardner I*. Id.

### 1. Officer Bohannan

In *Gardner I*, Plaintiff brings a substantive claim of negligence (Count One) and deliberate indifference (Count Two) against Officer Bohannan. *Gardner I*, dkt. no. 1 ¶¶ 53–70. In *Gardner II*, Plaintiff brings two claims against Officer Bohannan: "Negligent Violations of Ministerial Duties/Negligent Failure to Train or Supervise Employees to Avoid Violations of Ministerial Duties" (Count One) and "Supervisory/Failure to Train Liability

13

for Deliberate Indifference under the Eighth and/or Fourteenth Amendments 42 U.S.C. § 1983" (Count Two). Dkt. No. 1 ¶¶ 42-75.

Plaintiff argues that the claim-splitting doctrine does not apply to his claims against Defendant Bohannan because the factual allegations against Officer Bohannan in *Gardner II* are not "substantively identical" to the allegations made against Officer Bohannan in *Gardner I*. Dkt. No. 29 at 9-11. Specifically, Plaintiff points to paragraphs in the *Gardner II* complaint which contain the allegation that Officer Bohannan was the "Officer in charge" of the Brantley County Jail and that he did not take steps to ensure that the officers of the jail were properly trained or compliant with jail policies. Id. at 9 (citing Dkt. No. 1 ¶¶ 17, 45-59, 63, 69). Plaintiff notes that it was only through discovery in *Gardner I* that Plaintiff learned of Officer Bohannan's alleged supervisory role, i.e., that he was "essentially the warden of the Jail." Id. at 10-11.

To determine whether a new claim is based on the same "transaction or series of transactions" or "nucleus of operative facts," the Eleventh Circuit has adopted the transactional test that appears in the Restatement (Second) of Judgments, § 24, which instructs the pragmatic consideration of certain factors:

> [W]hether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

14

Restatement (Second) of Judgments § 24 (1982); see also Vanover, 857 F.3d at 842 ("Hence, the critical issue is whether the two actions under consideration are based on the *same nucleus of operative facts.*" (emphasis in original) (alterations adopted) (quoting Petro-Hunt, 365 F.3d at 396)).

In Vanover v. NCO Financial Services, Inc., the Eleventh Circuit affirmed a district court's finding that a plaintiff's Fair Debt Collection Practices Act and Florida Consumer Collection Practices Act claims arose from the same nucleus of operative fact in the plaintiff's prior, pending suit against the same defendant pursuant to the Telephone Consumer Protection Act. Vanover, 857 F.3d at 842. In that case, the court applied the transaction test and found that the claims were based on the same nucleus of operative facts, though based on distinct causes of action, distinct (though overlapping) time periods, and distinct methods of communication. Id. The court found that the two suits were both based on the "collection efforts" of the defendant, were "sufficiently related in time, origin, and motivation," and formed a "convenient trial unit"—therefore preventing the plaintiff from splitting her claims related to the collection efforts between lawsuits. Id. at 842–43.

Additionally, in Kennedy v. Floridian Hotel, Inc., the Eleventh Circuit applied the transaction test and found that a plaintiff's claims against the defendant were based on the same

15

transaction as the plaintiff's earlier and then-pending suit against the same defendant, as the claims were all based on the plaintiff's ability to access information regarding the defendant hotel's accessibility options. 998 F.3d at 1236–37. The court reached this finding even though the plaintiff had provided additional factual allegations in the second suit that did not appear in the first suit. Id. at 1236.

Likewise, Plaintiff's claims against Officer Bohannan are based on the same nucleus of operative fact. The claims are certainly temporally and spatially related, as all claims against Officer Bohannan in *Gardner I* and *Gardner II* are based on Officer Bohannan's conduct related to Plaintiff's detention at the Brantley County Jail from August 13 to August 31, 2023. Compare *Gardner I*, dkt. no. 1 ¶¶ 1–2, 6, 17–18, 24, 33–35, 47–48, 58–59 with Dkt. No. 1 ¶¶ 1–2, 7, 17, 33–36, 42–75. The claims are also related in origin and motivation, as the claims all seek redress for Plaintiff's alleged injuries suffered during his detention. Compare *Gardner I*, dkt. no. 1 ¶¶ 4, 62–63, 69 with Dkt. No. 1 ¶¶ 4, 53–58, 60–62, 64–74. Finally, the claims may certainly be considered as a "convenient trial unit" as Plaintiff himself wishes to litigate the *Gardner I* and *Gardner II* claims against Officer Bohannan together. See Dkt. No. 29 at 10–12; *Gardner I* Dkt. No. 32 at 9–15. Indeed, Plaintiff moved to either amend his complaint in *Gardner I* to include the claims from *Gardner II* or to consolidate

16

the actions by asserting that "[b]oth actions arise from the same detention, involve the same evidence, and present overlapping questions of law and fact." *Gardner I*, dkt. no. 32 at 14.

Thus, the transactional test is satisfied as to Plaintiff's *Gardner II* claims against Officer Bohannan.

**2. PA Veal**

In *Gardner I*, Plaintiff brings a claim of "Deliberate Indifference under the Eighth and/or Fourteenth Amendments 42 U.S.C. § 1983" against PA Veal (Count Two), and, in *Gardner II*, Plaintiff brings against PA Veal a claim of professional negligence. *Gardner I*, dkt. no. 1 ¶¶ 64-70; Dkt. No. 1 ¶¶ 83-96. Plaintiff does not appear to contest that his *Gardner II* claims against PA Veal are based on the same nucleus of operative fact as the claims against PA Veal in *Gardner I*. Instead, Plaintiff limited his arguments to the proper remedy for claim-splitting in response to PA Veal's motion to dismiss. See Dkt. No. 20 at 6-8.

A review of the complaint likewise confirms that the claims against PA Veal in *Gardner II* are based on the same nucleus of operative fact that form the basis of the claims against him in *Gardner I*. The same temporal and special relationship that connected the claims against Officer Bohannan connects the claims against PA Veal across the two actions. Compare *Gardner I*, dkt. no. 1 ¶¶ 1-2, 12, 26-31, 64-70 with Dkt. No. 1 ¶¶ 1-2, 9, 27-31, 83-96. The claims against PA Veal are likewise related in origin

17

and motivation, as the claims all seek redress for Plaintiff's alleged injuries suffered during his detention and due to the alleged wrongful acts or omissions of PA Veal. Compare *Gardner I*, dkt. no. 1 ¶¶ 4, 64–70 with Dkt. No. 1 ¶¶ 3–4, 83, 85, 87, 89. Lastly, Plaintiff views these claims as comprising a convenient trial unit. Dkt. No. 20 at 6–8 (arguing that Plaintiff's *Gardner II* claims against PA Veal should be litigated together with the *Gardner I* claims either through consolidation or amendment). Thus, Plaintiff's *Gardner II* claims against PA Veal are based on the same nucleus of operative fact and the transactional test is satisfied.

PA Veal and Officer Bohannan contend that if the *Gardner II* claims against them are dismissed due to improper claim-splitting, such a dismissal should be with prejudice, following the example of Vanover, Kennedy, and other district court decisions. See Dkt. No. 11 at 5 (citing Blochowicz v. Steinberg, No. CV 124-106, 2025 WL 2199903, at *2 (S.D. Ga. Aug. 1, 2025)); Dkt. No. 19 at 7–8 (citing Kennedy, 998 F.3d at 1228, 1237 (affirming the lower court's dismissal of claims on claim-splitting grounds with prejudice); Dkt. No. 30 at 6–7 (citing Vanover, 857 F.3d at 837, 843 (affirming the lower court's dismissal of claims on claim-splitting grounds with prejudice); Blochowicz, 2025 WL 2199903, at *2). As previously stated, however, the Court's ability to dismiss a claim due to improper claim-splitting is derived from its

18

discretionary authority to manage its docket. Vanover, 857 F.3d at 837, 841, 843 (noting that one of the objectives of the claim splitting doctrine is "empowering the district court to manage its docket"); Kennedy, 998 F.3d at 1236 n.7 ("We review a dismissal for improper claim-splitting for an abuse of discretion."). Here, Plaintiff's filing of *Gardner II* does not appear to be a malicious attempt to subject Officer Bohannan and PA Veal to duplicitous litigation. Plaintiff contends that *Gardner II* was filed in an attempt to preserve Plaintiff's legal rights after conducting discovery in *Gardner I*. See Dkt. No. 20 at 6–7; Dkt. No. 29 at 10. Maybe so. In any case, Plaintiff has expressed a desire for these claims to be tried in a single case, and a determination for whether these claims may be added to *Gardner I* is better suited for determination within the pending motion to amend in *Gardner I*. See Doe v. Sch. Bd. of Manatee Cnty., Fla., No. 8:25-CV-1577-CEH-TGW, 2025 WL 1906687, at *2 (M.D. Fla. July 10, 2025) (dismissing the case "without prejudice to Plaintiff amending her Complaint in [a related pending case] to assert the causes of action she raised in this action"); see also Blochowicz v. Steinberg, No. CV 124-106, 2025 WL 2199903, at *3 (S.D. Ga. Aug. 1, 2025) (dismissing a case and directing the parties that "all future filings should be filed exclusively in [a relevant pending case]".)

Thus, as Officer Bohannan and PA Veal both appear as Defendants in *Gardner I* and the claims against each in this action

are based on the same respective nucleus of operative fact as the claims in *Gardner I*, the claims against them represent impermissible claim-splitting. Therefore, Officer Bohannan's motion to dismiss, dkt. no. 19, and PA Veal's motion to dismiss, dkt. no. 11, are both **GRANTED** as to Plaintiff's claims against them, and these claims are **DISMISSED** without prejudice to the pending motion to amend in *Gardner I*, dkt. no. 32.

## B. Privity: The New Medical Defendants

Three of the other Defendants in the present action argue that the claims against them should be dismissed on claim-splitting grounds. Nurse Sandiford, FFP Sub, and Dr. Mullis (collectively "the new medical Defendants") all argue that the claim-splitting doctrine applies because the claims against each of them in the present action are based on the same nucleus of operative facts alleged in *Gardner I* and, though the new medical Defendants do not appear as defendants in *Gardner I*, they argue that each is in privity with PA Veal, a *Gardner I* defendant. Dkt. No. 12 at 3–7; Dkt. No. 15 at 4–8.

As previously stated, the test for claim-splitting is "whether the first suit, assuming it were final, would preclude the second suit." Vanover, 857 F.3d at 841 (quoting Katz, 655 F.3d at 1218). The "first suit" in this case is *Gardner I*, a case based on federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims under 28 U.S.C.

§ 1367. *Gardner I*, dkt. no. 1 ¶ 13. The only substantive claim against PA Veal in *Gardner I* is Count Two, a deliberate indifference claim brought pursuant to 42 U.S.C. § 1983. Id. ¶¶ 64-70. Therefore, federal common law principles determine whether *res judicata* would apply to bar the *Gardner II* claims which name the new medical defendants, assuming that the § 1983 deliberate indifference claim in *Gardner I* was finally decided. See Taylor v. Sturgell, 553 U.S. 880, 891 (2008) ("The preclusive effect of a federal-court judgment is determined by federal common law. For judgments in federal-question cases . . . federal courts participate in developing 'uniform federal rule[s]' of *res judicata*." (quoting Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 507-08 (2001))).

One of the elements that must be present for the doctrine of *res judicata* to bar an action that was previously decided in federal court is that the cases involved the same parties or their privies. Rodemaker v. City of Valdosta Bd. of Educ., 110 F.4th 1318, 1327 (11th Cir. 2024), cert. denied, 145 S. Ct. 2701 (2025).

Privity has previously been defined as a "relationship between one who is a party of record and a nonparty that is sufficiently close so a judgment for or against the party should bind or protect the nonparty." Id. (quoting NAACP v. Hunt, 891 F.2d 1555, 1560 (11th Cir. 1990)). The Supreme Court has listed a non-exhaustive list of categories that help courts determine when

21

this form of privity, or "nonparty preclusion," applies:

> (1)   the nonparty agreed to be bound by the litigation of others;
>
> (2)   a substantive legal relationship existed between the person to be bound and a party to the judgment;
>
> (3)   the nonparty was adequately represented by someone who was a party to the suit;
>
> (4)   the nonparty assumed control over the litigation in which the judgment was issued;
>
> (5)   a party attempted to relitigate issues through a proxy; or
>
> (6)   a statutory scheme foreclosed successive litigation by nonlitigants.

Griswold v. Cnty. of Hillsborough, 598 F.3d 1289, 1292 (11th Cir. 2010) (citing Taylor, 553 U.S. at 893-96). It is the second item in this list that the parties dispute here.[6]

The new medical Defendants argue that the substantive employment relationship between them and PA Veal establishes

---

[6] Though the new medical Defendants do not explicitly make this argument, they generally argue that their relationship to PA Veal is "sufficiently close" for a finding of privity. Dkt. No. 12 at 6-8; Dkt. No. 15 at 7-8 (quoting Hunt, 891 F.2d at 1560). This might bring to mind the "adequate representation" category of non-party representation detailed in Taylor. 553 U.S. at 894-95. For purposes of the category, however, a party provides "adequate representation" for a non-party "only if, at a minimum: (1) The interests of the nonparty and her representative are aligned . . . and (2) either the party understood herself to be acting in a representative capacity or the original court took care to protect the interests of the nonparty." Id. at 900-01 (internal citations omitted). There is no allegation that PA Veal understood himself to act in a representative capacity for the new medical Defendants in Gardner I, and therefore this exception does not apply.

privity such that the doctrine of claim-splitting should bar the claims against them in *Gardner II*. Dkt. No. 12 at 6-7; Dkt. No. 15 at 7-8. The Court in Taylor, however, provided examples of substantive legal relationships which cut against finding a definition of privity that includes any employment relationship: "Qualifying relationships include, but are not limited to, preceding and succeeding owners of property, bailee and bailor, and assignee and assignor." Taylor, 553 U.S. at 894 (citations omitted). The Court noted that "[t]hese exceptions originated 'as much from the needs of property law as from the values of preclusion by judgment.'" Id. (citing 18A Wright, Miller & Cooper's Federal Practice & Procedure § 4448 (2d ed. 2002)).

A clear example of when privity exists due to an employment relationship for purposes of preclusion is in a suit for vicarious liability: if the second suit is an action against an employer for vicarious liability due to an employee's conduct, and the employee's conduct was the subject of the previous suit, the employer is in privity with the employee for purposes of claim preclusion. Citibank, N.A. v. Data Lease Fin. Corp., 904 F.2d 1498, 1502-03 (11th Cir. 1990) (hereinafter "Data Lease").

In contexts other than vicarious liability, an employment relationship can sometimes constitute a substantive legal relationship that justifies a finding of privity, but not necessarily. For example, in Sealey v. Branch Banking & Trust

23

Company, the Court found a non-party employer was in privity, for purposes of preclusion, with its individual employees who had previously been sued where the previous suit was based on official actions the individuals took as employees of the company and the company had been in control of the prior litigation. 693 F. App'x 830, 834-35 (11th Cir. 2017). However, in Davis v. Davis, privity was not found for purposes of preclusion between a sheriff who had previously been sued and three deputy sheriffs who were later sued for allegedly depriving the plaintiff of his constitutional rights. 551 F. App'x 991, 993-94, 997 (11th Cir. 2014). In that case, the court found that, as a matter of law, the sheriff could not be vicariously liable for the deputy sheriffs' constitutional violations, and therefore, privity did not exist to bar the plaintiff's suit on *res judicata* grounds. Id. at 997 (citing Monell v. Dep't of Soc. Serv. of City of N.Y., 436 U.S. 658 (1978)).

The above legal standards and case examples make the privity determinations for the new medical Defendants relatively straightforward, and each is discussed below.

**1. Nurse Sandiford**

Unlike the non-party defendant in Sealey who had been in control of the prior litigation, Nurse Sandiford, though allegedly "acting in concert with" PA Veal and employed by the same company ("an alleged supervision link"), dkt. no. 12 at 6, does not appear to be in any way in control of the litigation in *Gardner I*. 693 F.

24

App'x at 834-35. More importantly, an employee-employee relationship is substantively more attenuated than an employer-employee relationship, and Nurse Sandiford has supplied no cases where privity is found for *res judicata* purposes simply because two employees shared the same employer and liability was based on distinct conduct. Dkt. No. 1 ¶¶ 24, 30 (alleging that Nurse Sandiford was independently aware that Plaintiff had not consumed food or water and had serious medical needs yet took no action to provide medical treatment). Thus, the relationship between Nurse Sandiford and PA Veal would not bar *Gardner II* on *res judicata* grounds if *Gardner I* were hypothetically final. Therefore, Plaintiff's claim against Nurse Sandiford for professional negligence in Count Four is not precluded on claim-splitting grounds, and Nurse Sandiford's motion to dismiss, dkt. no. 12, is **DENIED** on this basis.

### 2. Dr. Mullis

Next, Plaintiff alleges in Count Four that Dr. Mullis engaged in negligent supervision of PA Veal and Nurse Sandiford, and additionally, was "responsible for the standards of care of PA Veal" as a supervising physician. Dkt. No. 1 ¶¶ 90-91. Plaintiff argues that this is a claim for (1) negligent supervision of PA Veal and Nurse Sandiford and (2) vicarious liability for the actions of PA Veal under a traditional agency theory of liability. Dkt. No. 23 at 12-13. In the latter context, vicarious liability,

Dr. Mullis would be in privy with PA Veal for purposes of preclusion per Data Lease. 904 F.2d at 1502–03. Therefore, to the extent Count Four asserts a claim of vicarious liability against Dr. Mullis, the claim is barred on claim splitting grounds, and Defendant Mullis's motion to dismiss this claim, dkt. no. 15, is **GRANTED** and such a claim is **DISMISSED** without prejudice to the pending motion to amend in *Gardner I*, dkt. no. 32.

In the context of a new negligent supervision claim, however, Dr. Mullis would not be considered in privity with PA Veal because their respective actions are legally distinct. See Rodemaker, 110 F.4th at 1328 ("When one party's actions are *legally* another party's actions, those two parties have the kind of substantive legal relationship that establishes privity." (citations omitted)). When evaluating a negligent supervision claim under Georgia law, the actions of PA Veal are certainly relevant to whether Dr. Mullis negligently supervised him, but there are elements distinct from PA Veal's treatment of Plaintiff, specifically, whether Dr. Mullis "reasonably knew or should have known" about PA Veal's tendencies "to engage in certain behavior relevant to the injuries allegedly incurred by the plaintiff." Leo v. Waffle House, Inc., 681 S.E.2d 258, 262 (Ga. Ct. App. 2009) (quoting Alexander v. A. Atlanta Autosave, 611 S.E.2d 754, 759 (Ga. Ct. App. 2005))(affirming the trial court's grant of summary judgment for the defendant on a negligent supervision claim when

26

there was no record evidence that the employer knew or should have known that the employee had engaged in the wrongful behavior previously or had ever engaged in the behavior before). Thus, in the negligent supervision context, PA Veal and Dr. Mullis's actions are legally distinct. Therefore, for preclusion purposes, Dr. Mullis would not be in privity with PA Veal as to Plaintiff's claim of negligent supervision. That claim is thus not precluded on claim-splitting grounds, and Dr. Mullis's motion to dismiss, dkt. no. 15, is **DENIED** on that basis.

In summary, Dr. Mullis's motion to dismiss, id., is **GRANTED** as to Count Four solely to the extent Plaintiff asserts a claim for vicarious liability based on the conduct of PA Veal, and such a claim is **DISMISSED** without prejudice to the pending motion to amend in *Gardner I*, dkt. no. 32. However, to the extent Count Four asserts against Dr. Mullis a claim of negligent supervision of PA Veal, Dr. Mullis's motion to dismiss on claim splitting grounds, id., is **DENIED**.

### 3. FFP Sub

Finally, the privity analysis is relatively straightforward as to Defendant FFP Sub. In Count Four of the *Gardner II* complaint, Plaintiff alleges that FFP Sub is liable to Plaintiff under a theory of vicarious liability based on the conduct of, in part, Defendant Veal. Dkt. No. 1 ¶ 95. Just like the analysis supra, per Data Lease, this would be the type of action precluded based on

27

FFP Sub's substantive legal relationship to a party in a prior action based on the same nucleus of operative fact. 904 F.2d at 1502-03. However, Plaintiff also alleges FFP Sub is vicariously liable under a traditional agency theory of liability for the conduct of Nurse Sandiford and Dr. Mullis. Dkt. No. 1 ¶ 95. As previously stated, Nurse Sandiford is not in privity with PA Veal for purposes of preclusion, and Dr. Mullis is not in privity with PA Veal within the context of the supervisory liability claim against Dr. Mullis, so vicarious liability based on these parties' actions would not be precluded based on claim-splitting.

Therefore, FFP Sub's motion to dismiss, dkt. no. 12, is **GRANTED** as to Count Four to the extent Plaintiff asserts a claim of vicarious liability based on the conduct of PA Veal, and such a claim is **DISMISSED** without prejudice to the pending motion to amend in *Gardner I*, dkt. no. 32. but the motion is **DENIED** to the extent Plaintiff asserts a claim of vicarious liability based on the conduct of Nurse Sandiford and Dr. Mullis.

## II.  The Physician Assistant Act

Moving on from claim-splitting, the Court addresses Dr. Mullis's second argument to support his motion to dismiss. Therein, Dr. Mullis argues that Plaintiff's negligence claims against him are barred due to Georgia's passage of the Physician Assistant Act (the "PAA"). Dkt. No. 15 at 8-9; Dkt. No. 32 at 7-8. The PAA is a statutory scheme that defines the role of a

28

certified physician assistant ("PA") in Georgia, their duties, and their board approval requirements. See O.C.G.A. § 43-34-100 et seq. The statute also defines tasks to be performed by a PA under the direction and supervision of a "supervising physician." See O.C.G.A. §§ 43-34-105, 43-34-109. In Zeh v. Maso, the Georgia Court of Appeals found that the PAA does not create vicarious liability on the part of the supervising physician for the acts done by a supervised PA. 884 S.E.2d 563, 567 (Ga. Ct. App. 2023). As noted in a later concurrence by Justice Pinson, the holding in Zeh was limited to determining if there was a statutory duty *created by* the PAA and did not bear on what duties already exist under normal agency law. Maso v. Zeh, 895 S.E.2d 256, 257 (Ga. 2023) (Pinson, J., concurring).

As discussed supra, to the extent that Count Four brings a vicarious liability claim against Dr. Mullis based on the conduct of PA Veal, that claim is dismissed due to improper claim-splitting, and the only claim against Dr. Mullis under Count Four that survives the claim-splitting analysis is the claim for negligent supervision. Mullis argues this claim is precluded by the PAA. But the Court does not read Zeh to hold that the PAA displaces the typical duties that exist in a supervisor-supervisee context. See Zeh, 884 S.E.2d at 567 ("The General Assembly knows how to impose liability by statute when it chooses to, and we will not read into the PAA language that the General Assembly did not

29

include."); Maso, 895 S.E.2d at 257 (Pinson, J., concurring) ("I do not see clear evidence in the PAA that the legislature modified or displaced the longstanding principles of vicarious liability that would apply to such relationships.").

Thus, Plaintiff's negligent supervision claim against Dr. Mullis is not precluded by the PAA. Therefore, Dr. Mullis's motion to dismiss on this ground, dkt. no. 15, is **DENIED.**

### III. Official Immunity

The Court now turns to the arguments for dismissal made by Sheriff Davis. His first argument is that Count One of the complaint is barred by Georgia's doctrine of official immunity. Dkt. No. 19 at 8–10. Count One charges Sheriff Davis with "Negligent Violations of Ministerial Duties/Negligent Failure to Train or Supervise Employees to Avoid Violations of Ministerial Duties." Dkt. No. 1 ¶¶ 42–62.[7] Georgia's doctrine of official immunity mandates that "a public officer or employee may be personally liable only for ministerial acts negligently performed or acts performed with malice or an intent to injure." Grammens v. Dollar, 697 S.E.2d 775, 777 (Ga. 2010) (quoting Cameron v. Lang, 549 S.E.2d 341, 344 (Ga. 2001)); Ga. Const. art. I, § 2, ¶ IX(d). Here, as Count One alleges a negligent violation of a ministerial

---

[7] Though Plaintiff asserts Count One against both Sheriff Davis and Officer Bohannan, the following analysis is cabined to Sheriff Davis, because the complaint is dismissed as to Officer Bohannan on claim-splitting grounds, as discussed supra.

duty, liability hinges on whether the duty allegedly violated was ministerial or discretionary:

> A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty. A discretionary act, however, calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed.

McDowell v. Smith, 678 S.E.2d 922, 924 (Ga. 2009) (quoting Murphy v. Bajjani, 647 S.E.2d 54, 57 (Ga. 2007)). Whether a duty is discretionary or ministerial can be a heavily fact specific question. See Austin v. Clark, 755 S.E.2d 796, 773–75 (Ga. 2014) (reversing a trial court's dismissal based on its characterization of the disputed duty because whether there were discrete tasks for the official to follow in performance of the duty was a factual issue); Marshall v. McIntosh Cnty., 759 S.E.2d 269 (Ga. Ct. App. 2014) (same). In the context of a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the complaint need only plausibly allege that the disputed duty was ministerial in nature to survive the motion. See, e.g., Smith v. Wayne Cnty., Ga., 742 F. Supp. 3d 1350 (S.D. Ga. 2024) (denying a motion to dismiss because the plaintiff alleged sufficient facts to support a claim that the defendants were acting in a ministerial role); see also Iqbal, 556 U.S. at 678 (holding that to withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)

"a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'"(quoting Twombly, 550 U.S. at 570)).

Here, Plaintiff has not plausibly alleged that Sheriff Davis violated a ministerial duty. In his complaint, Plaintiff identified at least seven duties created by statute and jail policy which, Plaintiff alleges, Sheriff Davis violated. Dkt. No. 1 ¶¶ 45-46 (citing Jail Policy 5.3); id. ¶ 47 (citing Jail Policy 5.2); id. ¶ 52 (citing Jail Policy 5.4); id. ¶ 48 (citing O.C.G.A. § 42-4-32(d)); id. ¶¶ 50, 54 (citing Jail Policy 1.7); id. ¶¶ 51, 57 (citing Jail Policy 6.15); id. ¶ 51 (citing Jail Policy 5.14).

It is true that the Georgia Court of appeals has found that statutory duties mandating the *provision* of medical care to inmates in custody, including § 42-4-32(d), are not discretionary and thus official immunity does not apply to the violation of such a right. Middlebrooks v. Bibb Cnty., 582 S.E.2d 539, 542 (Ga. Ct. App. 2003) (finding that "[a]s the right to medical care is a fundamental right, it is not discretionary" and a violation is not subject to official immunity (citing Cantrell v. Thurman, 499 S.E.2d 416 (Ga. Ct. App. 1998); O.C.G.A. § 42-4-32(d)) (other citations omitted)).[8]

---

[8] Both Middlebrooks and Cantrell were later respectively disapproved of and overruled in part on other grounds by Tattnall Cnty. v. Armstrong, 775 S.E.2d 573, 576–77 (Ga. Ct. App. 2015) (holding that whether a state employee is performing a discretionary act as opposed to a ministerial act has no bearing on a sovereign immunity analysis). Armstrong itself was later

"However, 'the determination of *what* medical treatment to provide is an act of discretion subject to official immunity.'" Keele v. Glynn Cnty., Ga., 938 F. Supp. 2d 1270, 1309 (S.D. Ga. 2013) (quoting Howard v. City of Columbus, 521 S.E.2d 51, 66 (Ga. Ct. App. 1999) (physical precedent only)); Graham v. Cobb Cnty., 730 S.E.2d 439, 444 (Ga. Ct. App. 2012) (upholding the lower court's finding that the defendant sheriff was entitled to official immunity because "the determination of how to provide adequate medical care to the prisoners at the jail involved the use of discretion" by the defendant sheriff and the plaintiff did not allege that he acted with "willfulness, malice, or corruption").

Here, however, Plaintiff does not allege that *no* medical treatment was provided to him. Indeed, Plaintiff alleges that jail staff requested PA Veal to evaluate Plaintiff and PA Veal did perform an evaluation of Plaintiff at the Jail on August 25, 2023. Dkt. No. 1 ¶¶ 27–30. Instead, Plaintiff alleges violations of a duty based on the type and manner of medical care provided.

Plaintiff alleges that § 42-4-32(d) and other Jail Policies create a ministerial duty on the part of Sheriff Davis to designate a physician to provide medical care at the Jail because, first, § 42-4-32(d) requires that "a physician shall be immediately called if there are indications of serious injury, wound, or

---

overruled in part on other grounds by Rivera v. Washington, 784 S.E.2d 775 (Ga. 2016).

illness." Dkt. No. 1 ¶ 48. Plaintiff also argues that jail policies created a ministerial duty to officially "designate a physician" for care at the jail because (1) Jail Policy 5.3 required that an intake health appraisal be "reviewed by a physician," dkt. no. 1 ¶ 46; (2) Jail Policy 5.2 provides that inmates "are to be provided with" medical treatment "as directed by the designated medical physician," id. ¶ 47; and (3) Jail Policy 6.15 requires that an inmate must be "examined by a physician" after refusing a certain amount of meals, id. ¶ 51. See Dkt. No. 29 at 14.

The duties formed by § 42-4-32(d) and the cited jail policies, however, are discretionary in nature. In § 42-4-32(d), the determination of whether an "injury, wound, or illness" is "serious" enough to call a physician, and how that physician shall be called, is discretionary because the determination "calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed." McDowell, 678 S.E.2d at 924 (quoting Murphy, 647 S.E.2d at 57). The duties allegedly created by the jail policies are also not plausibly ministerial because, even if the policies created a duty on the part of Sheriff Davis to designate a physician, how a physician is designated or provided would be within the discretionary authority of the Sheriff. See Graham, 730 S.E.2d at 444 (finding that "the determination of how to provide adequate medical care to []

34

prisoners at the jail" involved the use of discretion).

The other jail policies Plaintiff cites as creating ministerial duties on the part of Sheriff Davis either create a duty in someone other than Sheriff Davis or fail to state the subject of the duty. For example, the complaint lists several duties of "officer[s]," "the booking deputy," "jail staff," "medical personnel," and "the jail administrator." Dkt. No. 1 ¶¶ 47, 50, 51, 53, 54, 55–57. But with respect to the duties of sheriffs relating to jail administration, "the operation of a police department, including the degree of training and supervision to be provided its officers, is a discretionary governmental function as opposed to a ministerial . . . or administratively routine function." Lundy v. Hancock Cnty., 890 S.E.2d 92, 102 (Ga. Ct. App. 2023) (quoting Harvey v. Nichols, 581 S.E.2d 272 (Ga. Ct. App. 2003), disapproved on other grounds by City of Richmond Hill v. Maia, 800 S.E.2d 573, 578 (Ga. 2017)); see also Dkt. No. 1 ¶ 58 (alleging that Sheriff Davis violated a ministerial duty by failing to "employ proper procedures to ensure [the alleged duties] were followed and to ensure officers were trained to follow them").

Plaintiff finally alleges some other duty-imposing jail policies but fails to allege on whom each duty is imposed. For example, Plaintiff alleges that: "inmates are to be provided with" necessary medical treatment; "inmates shall be furnished food;"

35

instructions of a physician "are to be carried out;" and a refusal-of-medical-treatment form "is to be completed and placed in an inmate's medical file." Id. ¶¶ 45, 47, 48, 52. Plaintiff does not allege that these duties were imposed on Sheriff Davis, outside of the general allegation that Sheriff Davis "failed to employ proper procedures to ensure [the alleged duties] were followed and to ensure that officers were trained to follow them." Id. ¶ 58. As discussed supra, a sheriff's duty to ensure that staff follow internal policies and are trained to do so is typically discretionary. Here, Plaintiff has not plausibly alleged a negligent violation of a ministerial duty on the part of Sheriff Davis.

Therefore, Sheriff Davis's motion to dismiss, dkt. no. 19, is **GRANTED** as to Count One and Count One is **DISMISSED** as to Sheriff Davis with prejudice.[9]

## IV.  Deliberate Indifference

In Count Two, Plaintiff claims that Sheriff Davis was deliberately indifferent in failing to supervise "and/or" train the officers at the Brantley County Jail "in violation of the

---

[9] A dismissal for failure to state a claim under Rule 12(b)(6) is a judgment on the merits, and such an adjudication is presumed to operate as a dismissal with prejudice. Eiber Radiology, Inc. v. Toshiba Am. Med. Sys., Inc., 673 F. App'x 925, 929 (11th Cir. 2016) (citing N.A.A.C.P. v. Hunt, 891 F.2d 1555, 1560 (11th Cir. 1990); Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 505, (2001)) (other citations omitted).

Eighth and Fourteenth Amendments to the United States Constitution". Dkt. No. 1 ¶¶ 63-75. Plaintiff's claim properly arises under the Fourteenth Amendment—and not the Eighth—as Plaintiff was a pretrial detainee during his confinement. Cottrell v. Caldwell, 85 F.3d 1480, 1490 (11th Cir. 1996) (citations omitted) ("Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners."); Dkt. No. 1 ¶ 1. "A deliberate-indifference claim has both an objective and a subjective component: an inmate must prove that she 'suffered a deprivation that was, objectively, sufficiently serious' and that the defendant 'acted with subjective recklessness as used in the criminal law.'" Gantt v. Everett, 162 F.4th 1107, 1111 (11th Cir. 2025) (quoting Wade v. McDade, 106 F.4th 1251, 1262 (11th Cir. 2024) (en banc)). To show this subjective recklessness, the plaintiff must show that the defendant was "actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff." Wade, 106 F.4th at 1262. Finally, even if the subjective component is met, the defendant is not liable if he "responded reasonably to the risk." Id. (quoting Farmer v. Brennan, 511 U.S. 825, 844-45 (1994)) (internal quotation marks omitted).

Sheriff Davis argues that Count Two of Plaintiff's complaint

37

should be dismissed for failure to state a claim because Plaintiff has not alleged (1) an official policy of deliberate indifference, (2) a sufficiently pervasive custom or practice of deliberate indifference, or (3) a need to train which was so obvious that the failure to train amounted to deliberate indifference. Dkt. No. 19 at 10-14. In response, Plaintiff does not argue that there was an official policy of deliberate indifference but instead argues that his complaint sufficiently alleged a pattern of deliberate indifference and, moreover, alleges a need to train that was so obvious as to constitute deliberate indifference. Dkt. No. 29 at 16-20.

Plaintiff brought this action against Sheriff Davis in his individual capacity. Dkt. No. 1 ¶ 6. For a supervisor to be liable in his individual capacity under § 1983, the supervisor must have either personally participated in the alleged unconstitutional conduct or there must be "a causal connection between actions of the supervising official and the alleged constitutional deprivation." Braddy v. Fla. Dep't of Lab. & Emp. Sec., 133 F.3d 797, 802 (11th Cir. 1998) (quoting Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)). A history of "widespread abuse" may in some cases establish this causal connection:

> The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. The deprivations that constitute widespread abuse sufficient to notify the supervising

official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences.

Brown, 906 F.2d at 671; see also Knight ex rel. Kerr v. Miami-Dade Cnty., 856 F.3d 795, 821 (11th Cir. 2017).

To state a constitutional violation based on the deliberate indifference of a supervisor, however, a plaintiff must allege that the supervisory defendant "actually knew" of a serious risk caused by his lack of appropriate supervision. See Franklin v. Curry, 738 F.3d 1246, 1250 (11th Cir. 2013) (finding, in the qualified immunity context, that the plaintiff failed to state a deliberate indifference claim against the defendant jail supervisors when the plaintiff did not allege that the supervisors "actually knew" of the serious risk posed by the actions of a subordinate). "The standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous." Braddy, 133 F.3d at 802.

Plaintiff has not sufficiently pleaded a deliberate indifference claim against Sheriff Davis based on a failure to train because Plaintiff has not provided sufficient factual allegations related to Sheriff Davis's knowledge of an alleged need to train or supervise the jail officers. Plaintiff makes three allegations relating to Sheriff Davis's mental state:

(1) Sheriff Davis "understood or should have understood" that his "failure to train and supervise constituted

             deliberate indifference," dkt. no. 1 ¶ 70;

(2)    Other incidents of abuse "would put a reasonable supervisor on notice" of the need to correct the provision of medical care, id. ¶ 71; and

(3)    Sheriff Davis "acted with the mental state necessary to violate the Eighth and Fourteenth Amendments," id. ¶ 75.

The first and third allegations are conclusory statements which recite an element of a deliberate indifference claim without providing sufficient factual allegations to permit the Court to infer such a conclusion. See id. (finding the allegation that jail supervisors "knew or should have known" of a risk was insufficient to state a claim a claim for deliberate indifference). The second allegation does not meet the subjective level of knowledge required for a finding of deliberate indifference, because Plaintiff does not allege that Sheriff Davis "actually knew" of the serious risks posed by his alleged failure to supervise or train. See Franklin, 738 F.3d at 1250.

Plaintiff's allegation that the need to train or supervise jail officers with respect to certain procedures related to inmate medical care was so obvious that the failure to provide such supervision or training would constitute deliberate indifference similarly falls short. The U.S. Supreme Court has indicated that a failure to adequately train might amount to deliberate indifference in the municipal liability context where the need for

40

different or more training is "so obvious" and the lack of training is "so likely to result in the violation of constitutional rights." that municipal policymakers were deliberately indifferent to the need. City of Canton, Ohio v. Harris, 489 U.S. 378, 390 (1989). The Eleventh Circuit has found that if it is an exception at all, it is a very narrow one as it applies only in hypothetically extreme contexts such as not training officers on the use of deadly force when a city provides police with firearms knowing the officers will be pursuing fleeing felons. See Gold v. City of Miami, 151 F.3d 1346, 1352 (11th Cir. 1998) (citing City of Canton, 489 U.S. at 390 n.10). Plaintiff's allegations that jail officers were improperly trained on specific procedures related to inmate medical care "falls far short of the kind of 'obvious' need for training that would support a finding of deliberate indifference to constitutional rights" on the part of Sheriff Davis. City of Canton, 489 U.S. at 396–97 (O'Connor, J., concurring in part and dissenting in part) (finding that a lack of police officer training as to diagnosing symptoms of emotion illness was not so obvious as to constitute deliberate indifference); see also, e.g., Gold, 151 F.3d at 1352 (lack of officer training and supervision as to disorderly conduct and handcuff complaints was not so obvious as to constitute deliberate indifference); Young v. City of Augusta, Ga. ex rel. DeVaney, 59 F.3d 1160, 1171–72 (11th Cir. 1995) (inadequate employee selection and training related to "inmates

suffering from mental illness and failing to provide onsite medical care" was not so obvious as to constitute deliberate indifference).

Thus, Plaintiff has not adequately pleaded a claim of deliberate indifference under § 1983 as to Sheriff Davis. Therefore, Sheriff Davis's motion to dismiss, dkt. no. 19, is **GRANTED** as to Count Two and Count Two is **DISMISSED** as to Sheriff Davis with prejudice.

## V.    Denial of Leave to Amend

When the time for a party to amend a pleading as a matter of course has passed, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The decision to allow amendment is within the district court's discretion, though this discretion is restricted. "[D]istrict courts should generally exercise their discretion in favor of allowing amendments to reach the merits of a dispute." Pinnacle Advert. & Mktg. Grp., Inc. v. Pinnacle Advert. & Mktg. Grp., LLC, 7 F.4th 989, 999–1000 (11th Cir. 2021) (citing Shipner v. E. Air Lines, Inc., 868 F.2d 401, 406–07 (11th Cir. 1989) (stating that Rule 15's policy of "liberally permitting amendments to facilitate [the] determination of claims on the merits circumscribes the exercise of the district court's discretion")). District courts may use this discretion "to allow pleading amendments even when a party does not formally request leave." Id.

42

On the other hand, "a district court is not required to grant a plaintiff leave to amend his complaint *sua sponte* when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court." Wagner v. Daewoo Heavy Indus. Am. Corp., 314 F.3d 541, 542 (11th Cir. 2002). This rule is "in line with the critically important concept of finality in our judicial system." Id.

In this case, *Gardner II*, Plaintiff is represented by counsel and has not formally moved for leave to amend his complaint. Instead, Plaintiff has requested leave to amend his complaint in his responsive motion to Sheriff Davis and Officer Bohannan's consolidated motion to dismiss and has provided no proposed amended complaint. See Dkt. No. 29 at 16 ("At worst, if the Court feels that the Complaint is not sufficiently detailed, it should give Plaintiff the opportunity to amend."). If Plaintiff wanted to amend his complaint to plead facts sufficient to satisfy federal pleading requirements, he was free to request leave to do so, and the Court would have considered his justifications and proposed amendments liberally. Fed. R. Civ. P 15(a)(2); Pinnacle, 7 F.4th at 999–1000. Plaintiff did not. Plaintiff's failure to move for an amendment, or provide any kind of proposed amended complaint along with his request to amend, deprived this Court of the opportunity to review the proposed amendments and examine the justifications for amending. For these reasons, and considering the deficiencies in

Plaintiff's claims, the Court declines to allow Plaintiff leave to amend his complaint in this case. Of course, Plaintiff's motion for leave to amend and/or consolidate in *Gardner I* is a separate consideration, dkt. no. 32.

## CONCLUSION

For the reasons stated above:

The motions to dismiss filed by Defendants Sheriff Davis, Officer Bohannan, and PA Veal, dkt. nos. 11, 19, are **GRANTED** in their entirety. The claims against Officer Bohannan and PA Veal are **DISMISSED** without prejudice to the pending motion to amend in *Gardner I*, dkt. no. 32. The claims against Sheriff Davis are **DISMISSED** with prejudice.

The motions to dismiss filed by Defendants FFP Sub, Nurse Sandiford, and Dr. Mullis, dkt. nos. 12, 15, are **GRANTED in part** and **DENIED in part.** The motions are **GRANTED** as to Plaintiff's claims against (1) Dr. Mullis for vicarious liability for PA Veal's conduct and (2) FFP Sub for vicarious liability for PA Veal's conduct, and those claims are **DISMISSED** without prejudice to the pending motion to amend in *Gardner I*, dkt. no. 32. The motions are **DENIED** as to Plaintiff's claims against (1) Nurse Sandiford for professional negligence, (2) Dr. Mullis for negligent supervision of PA Veal, and (3) FFP Sub for vicarious liability for Nurse Sandiford's conduct.

This case is hereby **ADMINISTRATIVELY STAYED** pending

44

45

resolution of the motion to amend and/or consolidate in *Gardner I*.

Id.

      **SO ORDERED** this 2nd day of July, 2026.


_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA